IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

| | |
|---|---|
| RONALD A. NEAL, ) | |
| ) | |
|     **Plaintiff,** ) | |
| ) | |
| v. ) | **CIVIL ACTION NO. 5:08-01296** |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
|     **Defendant.** ) | |

**M E M O R A N D U M   O P I N I O N**

This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 40 - 433, 1381-1383f. This case is presently pending before the Court on the Plaintiff's Motion to Reverse or Remand (Document No. 16.), the Defendant's Motion for Judgment on the Pleadings (Document No. 18.), and the Plaintiff's Response. (Document No. 19.) Both parties have consented in writing to a decision by the United States Magistrate Judge. (Document Nos. 4 and 5.)

The Plaintiff, Ronald A. Neal (hereinafter referred to as "Claimant"), filed applications for DIB and SSI on August 8, 2003 (protective filing date), alleging disability as of June 5, 2003, due to injuries to both knees and his neck, high blood pressure, and depression.[1] (Tr. at 74, 75-77, 111, 540-43.) The claims were denied initially and upon reconsideration. (Tr. at 42-46, 49-50, 544, 545-46, 549-50.) On April 29, 2005, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 55.) The hearing was held on April 11, 2006, before the Honorable Brian P. Kilbane.

---

[1] Upon reconsideration of his claims, Claimant alleged seizures as an additional disabling impairment. (Tr. at 47, 49-50, 96.)

(Tr. at 553-82.) By decision dated September 25, 2006, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 19-25.) The ALJ's decision became the final decision of the Commissioner on October 10, 2008, when the Appeals Council denied Claimant's request for review.[2] (Tr. at 6-8.) On November 19, 2008, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2006). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the

---

[2] The Appeals Council initially denied Claimant's request for review because it was filed late. (Tr. at 11-13.) However, Claimant subsequently obtained present counsel who advised the Appeals Council that their decision utilized an incorrect date of the ALJ's decision, and therefore, the request for review was filed timely. The Appeals Council ultimately denied Claimant's request for review on October 10, 2008. (Tr. at 6-8.)

claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2006). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> (C) *Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently,

3

> appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
> (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[3] Fourth, if the claimant's impairment(s) is/are

---

[3] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date, June 5, 2003. (Tr. at 21, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from degenerative joint disease of the knees, degenerative disc disease of the spine, carpal tunnel syndrome, seizure disorder, depression, and anxiety, which were severe impairments. (Tr. at 21, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 22, Finding No. 4.) The ALJ then found that Claimant had a residual functional capacity for work at the light level of exertion, with the following limitations:

> [T]he claimant has the residual functional capacity to sit up to six hours in an eight-hour work day, stand and walk up to six hours in an eight-hour day, and lift and carry weights of up to 10 pounds frequently and 20 pound[s] occasionally. He can occasionally stoop, balance and crawl, but he needs to avoid all exposure to hazards such as unprotected heights and moving machinery. He can understand simple instructions and interact appropriately with others.

(Tr. at 23, Finding No. 5.) At step four, the ALJ found that Claimant could not return to his past relevant work. (Tr. at 25, Finding No. 6.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ concluded that Claimant could perform jobs such as a service station attendant and janitorial worker, at the light level of exertion, and as a cashier, at the sedentary and light levels of exertion. (Tr. at 25A, Finding No. 10.) On this basis, benefits were denied. (Tr. at 25A-B, Finding No. 11.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is not supported by

substantial evidence.

Claimant's Background

Claimant was born on May 25, 1955, and was 50 years old at the time of the administrative hearing, April 11, 2006. (Tr. at 25, 75, 559, 574.) Claimant had a high school education, a two-year college degree in computer science, and was able to communicate in English. (Tr. at 25, 111, 117, 560, 574.) In the past, he worked as a truck driver, computer support person, and a trade worker for the North Carolina State Highway Patrol. (Tr. at 25, 112-13, 560-63, 574.)

The Medical Record

The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant first alleges that the ALJ erred in not explaining why he assessed an RFC of light work with additional limitations when a previous ALJ determined on February 19, 1997, that he was limited to work at the sedentary RFC exertional level. (Document No. 17 at 2-3.) Claimant asserts that pursuant to Albright v. Commissioner of Social Security, 174 F.3d 473 (4th Cir. 1999) and Lively v. Secretary of Health & Human Services, 820 F.2d 1391 (4th Cir. 1987), the ALJ was required to "reflect why the presiding ALJ differs from a prior decision." (Id. at 3.)

In response to Claimant's argument, the Commissioner asserts that there is no conflict between the two ALJ decisions because each decision adjudicated a different time period. (Document No. 18 at 7-8.) The Commissioner notes that ALJ Kilbane adjudicated the time period from August 8, 2003, to September 28, 2006, whereas the previous ALJ adjudicated the time period from January 2, 1996, to February 17, 1997. (Id. at 7.) Citing Albright, the Commissioner contends that second or successive applications for benefits are treated as claims apart from the previously filed applications.

(Id.) Consequently, ALJ Kilbane "was permitted to find differently than the prior ALJ did in 1997 because he had the opportunity to weigh medical evidence and testimony that was unavailable to the prior ALJ." (Id.) In Reply, Claimant asserts that SSR 00-1(4) sets forth the relevant factors that ALJ Kilbane should have considered in determining the weight he gave the prior ALJ's findings. (Document No. 19 at 2-3.)

Claimant next alleges that the ALJ erred in not finding that transferability of job skills was material to the determination of disability. (Document No. 17 at 3-4.) Claimant contends that once a claimant reaches the age of 50, transferability is an issue. (Id. at 4.) The Commissioner asserts that Claimant's argument is without merit because under the Medical-Vocational Guidelines, transferability of skills is not essential to be deemed capable of light work. (Document No. 18 at 8.) The Commissioner asserts that "[t]ransferability of skills is only essential for individuals of 'advanced age' (55 and older) who are limited to light or sedentary work." (Id.) In Reply, Claimant asserts that in some cases, "a person younger than 'advanced age' transferability is 'material.'" (Document No. 19 at 4.) Claimant nevertheless concedes that in this case, the Court could find that transferability was not an issue in this case. (Id.)

Finally, Claimant alleges that the VE's testimony was inconsistent with the Dictionary of Occupational Titles ("DOT"). (Document No. 17 at 4-6.) Regarding the job as a janitor, Claimant contends that he found in the DOT seven jobs of this type to be light in exertion and one sedentary in exertion. (Id. at 5.) Of the seven light jobs, three jobs required "more education than simple routine instructions," which leaves only the job as a housekeeper, which Claimant asserts is inconsistent with that of a janitor. (Id.) Regarding the service station attendant job, Claimant asserts that the DOT requires frequent stooping, which is inconsistent with the ALJ's assessed RFC. (Id.) With respect to the cashier job, Claimant asserts that a Cashier I, performed at the sedentary exertional level, would

cause Claimant to "grid out" at his 50th birthday or six months prior thereto. (Id.) Finally, Claimant asserts that while Cashier II is light in exertional level, the ALJ failed to distinguish between light and sedentary cashier jobs. (Id.) Thus, Claimant contends that "there is no delineation between which jobs are sedentary and which jobs are light in the region." (Id. at 5-6.) Claimant therefore, asserts that there may not be enough jobs in the region that Claimant could participate. (Id. at 6.)

In Response, the Commissioner asserts that 20 C.F.R. § 416.966 provides that the DOT is not the Commissioner's sole source of job data, but one of many sources. (Document No. 18 at 10.) The Commissioner further asserts that the DOT lists "the maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings." (Id.) Thus, even if the DOT's maximum requirements are greater than Claimant's purported ability, the Commissioner asserts that there is no conflict between the VE's testimony and the DOT. (Id.)

Analysis.

Prior Decision.

Claimant first alleges that the ALJ erred in his decision by not discussing or resolving certain conflicts with the February 17, 1997 decision. (Document No. 17 at 3.) The Commissioner asserts that Claimant's argument is without merit because the current ALJ considered a different time period. (Document No. 18 at 7-8.)

In Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473 (4th Cir. 1999)(King, Circuit Judge), the Fourth Circuit recognized that the "SSA treats a claimant's second or successive application for disability benefits as a claim apart from those earlier filed, at least to the extent that the most recent application alleges a previously unadjudicated period of disability." Within the Fourth Circuit, Acquiescence Ruling 00-1(4), 2000 WL 43774 (Jan. 12, 2000), interpreted the Albright

decision

> to hold that where a final decision of SSA after a hearing on a prior disability claim contains a finding required at a step in the sequential evaluation process for determining disability, SSA must consider such finding as evidence and give it appropriate weight in light of all relevant facts and circumstances when adjudicating a subsequent disability claim involving an unadjudicated period.

The SSA explained how it applies the Albright decision within the Fourth Circuit as follows:

> When adjudicating a subsequent disability claim arising under the same or a different title of the Act as the prior claim, an adjudicator determining whether a claimant is disabled during a previously unadjudicated period must consider such a prior finding as evidence and give it appropriate weight in light of all relevant facts and circumstances. In determining the weight to be given such a prior finding, an adjudicator will consider such factors as: (1) whether the fact on which the prior finding was based is subject to change with the passage of time, such as a fact relating to the severity of a claimant's medical condition; (2) the likelihood of such a change, considering the length of time that has elapsed between the period previously adjudicated and the period being adjudicated in the subsequent claim; and (3) the extent that evidence not considered in the final decision on the prior claim provides a basis for making a different finding with respect to the period being adjudicated in the subsequent claim.
>
> Where the prior finding was about a fact which is subject to change with the passage of time, such as a claimant's residual functional capacity, or that a claimant does or does not have an impairment(s) which is severe, the likelihood that such fact has changed generally increases as the interval of time between the previously adjudicated period and the period being adjudicated increases. An adjudicator should give greater weight to such a prior finding when the previously adjudicated period is close in time to the period being adjudicated in the subsequent claim, e.g., a few weeks as in *Lively*. An adjudicator generally should give less weight to such a prior finding as the proximity of the period previously adjudicated to the period being adjudicated in the subsequent claim becomes more remote, e.g., where the relevant time period exceeds three years as in *Albright*. In determining the weight to be given such a prior finding, an adjudicator must consider all relevant facts and circumstances on a case-by-case basis.

Id., 2000 WL 43774, at *4; see also, Gilliam v. Astrue, 2010 WL 1009726, at *9-12 (S.D. W.Va.).

In the ALJ's September 28, 2006, decision, the ALJ did not acknowledge his obligation under AR 00-1(4), but nevertheless concluded that Claimant had the residual functional capacity to perform work at the light level of exertion with certain limitations. (Tr. at 23.)

On the prior application, the ALJ concluded on February 18, 1997, that Claimant retained the residual functional capacity for sedentary exertional work as follows:

> [T]he claimant retains the residual functional capacity to lift and carry at least 10 pounds; sit for up to 6 hours out of an 8-hour workday, and stand and walk for approximately 2 hours out of an 8-hour workday (20 C.F.R. §§ 404.1567 and 416.697). The claimant has no significant non-exertional limitations which narrow the range of work he can perform.

(Tr. at 35.)

As the Commissioner emphasizes, the September 28, 2006, decision concerned the time period from June 5, 2003, to September 28, 2006, whereas the prior application and decision adjudicated the time period from January 2, 1996, to February 17, 1997. It is clear that nearly eight years lapsed between the two time periods, and in the September 28, 2006, decision, the ALJ considered evidence subsequent to the previous application decision. The ALJ in the previous decision concluded that Claimant's right lower extremity pain and hypertension were severe impairments. (Tr. at 33.) Regarding the September 28, 2006, decision, the ALJ found that Claimant suffered from the severe impairments of degenerative joint disease of the knees, degenerative disc disease of the spine, carpal tunnel syndrome, seizure disorder, depression, and anxiety. (Tr. at 21.) Despite the increased severe impairments from the previous decision, the ALJ concluded that Claimant could perform light exertional activity with certain limitations. Thus, notwithstanding the passage of time and the increased number of severe impairments, the ALJ found in the September 28, 2006, decision that Claimant had an increased exertional level, without providing any explanation for the increased RFC. The previous ALJ decision indicates that Claimant had similar complaints and symptoms as presented in the instant application.

Based on the foregoing, the Court finds that the ALJ erred in failing to conduct an analysis that complies with AR 00-1(4), and therefore, remand is required. Because the Court has determined

11

that remand is necessary on Claimant's first allegation, the Court does not consider Claimant's remaining two allegations.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Judgment on the Pleadings (Document No. 12.) is **GRANTED**, Defendant's Motion for Judgment on the Pleadings (Document No. 14.) is **DENIED**, the final decision of the Commissioner is **REVERSED**, and this matter is **REMANDED** to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further administrative proceedings and is **DISMISSED** from the active docket of this Court..

The Clerk of this Court is directed to send a copy of this Memorandum Opinion to counsel of record.

ENTER: March 31, 2010.

R. Clarke VanDervort
United States Magistrate Judge